UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ZACHARY CARSON DIETZ,<br><br>Plaintiff,<br><br>vs.<br><br>DEPARTMENT OF SOCIAL SERVICES CHILD SUPPORT, Officials at Department of Social Services, in its individual and official capacities; WENDY KUHNERT, Employee at Raven Ind, in her individual capacity; JESSICA BAVERLE,[1] in her individual capacity; and MICHELLE JOHNSON, in her individual capacity,<br><br>Defendants. | 4:23-CV-04114-RAL<br><br><br>1915A SCREENING<br>OPINION AND ORDER |

Plaintiff Zachary Carson Dietz, an inmate at the Sioux Falls Minimum Center,[2] filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. Dietz moved for leave to proceed in forma pauperis and provided his prisoner trust account report. Docs. 2, 3. This Court granted Dietz leave to proceed in forma pauperis, Doc. 5, and he timely paid his initial partial filing fee. This Court now screens Dietz's complaint.

---

[1] Dietz claims that the defendant's last name is spelt as Bauerle. Doc. 6 at 1. In this order, this Court will refer to the defendant by the correct spelling of her last name.

[2] At the time Dietz filed his complaint, he was incarcerated at the Yankton Community Work Center. Doc. 1. He has since been transferred to the Sioux Falls Minimum Center. See Offender Locator, S.D. Dep't of Corr, https://doc.sd.gov/adult/lookup/ (last visited Apr. 22, 2024).

I.      **1915A Screening**

A.      **Factual Background**

Dietz claims that he "has been victimized for 22 years by a corrupt system of judicial misconduct in South Dakota courts" because of an allegedly unconstitutional child-support scheme "to criminally defraud the United States government and willfully deprive countless citizens of their constitutional rights for the sole intent of unlawful financial gain." Doc. 1-1 at 1 (capitalization omitted). Dietz alleges several causes of action against the defendants arising out of his obligations to pay child support. Id. at 28–29; Doc. 1 at 4–6.

Dietz's his first daughter was born to Wendy Kuhnert in 1998. Doc. 1-1 at 5. In 2000, Kuhnert and Dietz broke up, but Dietz still paid for health insurance and half the costs of daycare for his first daughter. Id. Dietz and Kuhnert split time with his first daughter as equally as possible. Id. Dietz bought a home and enrolled in school at Southeast Technical Institute to become an electromechanical technician. Id.; Doc. 1 at 6. Dietz received student loans through a "federally protected program" to pay for his schooling. Doc. 1 at 6; Doc. 1-1 at 5. He found employment as a motor mechanic. Doc. 1-1 at 5. He worked thirty-hours-per-week at $10.50 per hour and took home about $250.00 per week. Id.; Doc. 1 at 6.

Dietz alleges that "influenced by a gold-digging mother and a jealous new boyfriend Wendy filed for child support for no reason other than spite." Doc. 1-1 at 5 (capitalization omitted). Dietz claims that Kuhnert did not need support from him because Kuhnert and her new boyfriend lived together. Id. Dietz and Kuhnert had a hearing before a referee. Id. Dietz brought receipts for his expenses, but the " 'referee' forced [Dietz] into a contract [he] did not agree with, nor did [he] create it." Id. at 6. Dietz was ordered to pay $394.00 in child support, which was garnished from his wages; after collection of child support, he was allegedly left with only $600.00

2

per month for his expenses. Id. Because of the wage garnishment, Dietz was forced to work forty-hours-per-week plus overtime and drop out of school with only one semester left. Doc. 1 at 6.

In 2005, Dietz's second daughter was born.[3] Doc. 1-1 at 7. Dietz's second wage garnishment came months later in the amount of $260.00. Id. For both daughters, Dietz's garnishment was $650.00, providing him only $120.00 per week for his expenses. Id. at 8. Dietz alleges that the wage garnishments begun without any due process or evidence and without the mothers being provided a Temporary Assistance for Needy Families application. Id. at 7–8.

In 2012, Dietz's wages were garnished for child support for his third daughter without a paternity test or due process. Id. at 23. Michelle Johnson gave birth to Dietz's third daughter in 1993, but the wage garnishments did not begin until 2012. Id. Dietz's wage garnishments were increased to $920.00. Id.

Dietz alleges that the South Dakota Department of Social Services (DSS) Division of Child Support (DCS) titled him as a non-custodial parent "by a 1% margin without any evidence, facts or without any investigation or due process and began illegally garnishing [his] wages." Doc. 1 at 4 (capitalization omitted). He alleges that he was coerced into entering a contract that he did not create, authorize, or agree with. Id. Dietz claims that because of the wage garnishments, he has "been forced to live off of 30% of a 10.00-$15.00 wage which is impossible, oppressive and way below the minimum wage, forcing [him] into slavery, poverty, extreme depression, denied housing, EBT." Id. (capitalization omitted).

Dietz claims that the State of South Dakota improperly intervened in his parental decisions without a compelling reason because child support removed his rights of fatherhood. Id. at 5. He

---

[3] Dietz does not identify the mother of his second daughter. Doc. 1-1 at 7. For the purposes of screening, this Court assumes that Jessica Bauerle is the mother of Dietz's child born in 2005 because Dietz claims that he paid child support to Bauerle. Id. at 38.

claims that "how much money [he] spend[s] on [his] children for the care & maintenance is [his] decision and a guaranteed right under the Constitution." Id. (capitalization omitted). Dietz alleges that because of the defendants' actions he "was financially ruined, could not afford mortgage payment, bills, could barely survive." Id. at 4 (capitalization omitted). His home was foreclosed upon, and his vehicle was repossessed. Id. at 4; Doc. 1-1 at 7. Dietz also claims that the wage garnishments destroyed his life, ruined his friendships and relationships, resulted in the permanent revocation of his driver's license, and labeled him as a deadbeat dad. Doc. 1 at 5; Doc. 1-1 at 8, 13.

Dietz sues DCS in its individual and official capacity. Doc. 1 at 2. Dietz sues Kuhnert, Bauerle, and Johnson in their individual capacities. Id. "It is [Dietz's] belief that [he] paid money to a fraudulent child support system and would like [his] money back." Id. at 7 (capitalization omitted). He requests that his driver's license be reinstated because it was permanently revoked without due process and is necessary for him to live and succeed on parole. Id. He asks this Court to review his criminal history and credit history and have them vacated. Id. He seeks review of the state-court order for support and asks for compensatory and punitive damages. Id.; Doc. 1-1 at 37.

**B.    Legal Standard**

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of

Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).  Civil rights complaints cannot be merely conclusory.  Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted).  If a complaint does not contain these bare essentials, dismissal is appropriate.  See Beavers v. Lockhart, 755 F.2d 657, 663–64 (8th Cir. 1985) (citation omitted).  Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]"  550 U.S. at 555 (internal citation and footnote omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)).  Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation removed) (quoting Twombly, 550 U.S. at 556).  Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

### C.   Dietz's Claims

#### 1.   Rooker-Feldman

Dietz generally "asks the Courts to enter a judgement terminating 'the private for profit contractual non judicial IV-D collections case effectively, awarding actual, compensatory and punitive damages as Court see's [sic] fit[.]" Doc. 1-1 at 37 (capitalization omitted). Dietz alleges that the defendants conspired to commit fraud to enforce void child support orders and wage garnishments, illegally suspended his driver's license, and coerced him via a referee to enter into an unlawful child support contract. See generally Docs. 1, 1-1.

To the extent that Dietz requests that this Court review and terminate his state-court child support orders and hearing decisions, those claims are barred by the Rooker-Feldman doctrine. Dietz incorrectly alleges that the Rooker-Feldman doctrine does not apply to his case. Doc. 1-1 at 27. "The Rooker-Feldman doctrine prohibits lower federal courts from exercising appellate review of state court judgments." Skit Intern., Ltd. v. DAC Techs. of Ark., Inc., 487 F.3d 1154, 1156 (8th Cir. 2007) (citing D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413, 416 (1923)). "The Rooker-Feldman doctrine bars both straightforward and indirect attempts by a plaintiff to undermine state court decisions. Litigants may not pursue federal claims with allegations that are inextricably intertwined with a state court decision." Prince v. Ark. Bd. of Exam'rs in Psych., 380 F.3d 337, 340 (8th Cir. 2004) (internal citations omitted). Thus, Dietz's claims requesting review and termination of his state child support obligations are barred by the Rooker-Feldman doctrine and are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[4]

---

[4] Dietz also alleges that a body attachment is a "debt-collecting tool using unlawful arrests and unlawful imprisonment for debt to collect a debt." Doc. 1-1 at 22 (capitalization omitted). Dietz appears to argue that his incarceration was unconstitutional and removes judicial immunity. See

But "a federal district court would have jurisdiction over constitutional challenges to a state statute which would not require review of [a] state court judgment." Beach v. Minnesota, 2003 WL 21488679, at \*4 (D. Minn. June 25, 2003) (citing Postma v. First Fed. Sav. & Loan, 74 F.3d 160, 162 n.3 (8th Cir. 1996)) affirmed by 92 F. App'x 386 (8th Cir. 2004) (per curiam). Thus, this Court will analyze Dietz's challenges to state statutes that do not violate the Rooker-Feldman doctrine.

### 2.      Child Support Constitutional Claims

Dietz argues that child support is unconstitutional for several reasons. See generally Docs. 1, 1-1. "It is [Dietz's] belief that [he] paid money to a fraudulent child support system and would like [his] money back." Doc. 1 at 7 (capitalization omitted). Dietz claims that "the administrative child support process [was] created by its legislature to be a violation of the separation of powers[,]" but "due to the limitations of [his] incarceration, mail, photocopies, stamps, etc [he is] skipping over separation of powers violations." Doc. 1-1 at 20–21.

To the extent that Dietz alleges that federal or state statutes are unconstitutional without explaining precisely why he believes they are unconstitutional, Dietz's "challenges to the constitutionality of the listed statutes, which are no more than legal conclusions couched as factual allegations, see [Iqbal, 556 U.S. at 678], should be dismissed." Baylor v. Eto, 2019 WL 3470798, at \*6 (D. Minn. May 30, 2019), R&R adopted by 2019 WL 3456841 (D. Minn. July 31, 2019).

---

id. But Dietz does not sue the judge from his criminal convictions, and his current convictions are for forgery and counterfeiting lottery tickets, not for failure to pay child support. See Offender Locator, S.D. Dep't of Corr, https://doc.sd.gov/adult/lookup/ (last visited Apr. 24, 2024). Although Dietz argues that a body attachment "would also render [him] liable to prosecution under federal & state statutes," Doc. 1-1 at 22 (capitalization omitted), he has not shown the requirements for Article III standing: that an injury is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Iowa Right to Life Comm., Inc. v. Tooker, 717 F.3d 576, 584 (8th Cir. 2013) (quoting Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010)).

a.      **Child Support in General**

Dietz claims that child support is unconstitutional because "how much money [he] spend[s] on [his] children for the care & maintenance is [his] decision and a guaranteed right under the Constitution." Doc. 1 at 5 (capitalization omitted). See also Doc. 1-1 at 3 ("How much money a parent spends for the care & maintenance of their child is a parenting decision and is a **constitutionally guaranteed right**." (capitalization omitted)).

Many courts have held that child support does not violate parents' fundamental rights. See Ariz. ex rel. Smith v. Stevens, 2023 WL 4636119, at *2 (Ariz. Ct. App. July 20, 2023) (holding that whether a parent receives assistance through a state Title VI-D program does not involve the child's care, custody, and control, and thus, "[a]n action securing child support . . . does not involve any fundamental parental rights."); Gallaher v. Elam, 104 S.W.3d 455, 461 (Tenn. 2003) (identifying that parents have a fundamental right to care and custody of their children, which "is distinct from the duty to support a child . . . . Allocating a certain amount of financial support to one's child is a mandatory obligation, not a fundamental right.  As such, parents have no fundamental right to allocate support to their children as they see fit."); Crookham v. Smith, 68 Cal. App. 3d 773, 779 (Cal. Ct. App. 1977) ("[A] parent does not have a fundamental right not to contribute as much as he or she is able to the support of his or her child."); C.M.L. v. C.A.L., 293 So. 3d 417, 426 (Ala. Civ. App. 2019) ("Parental support is a fundamental right of all minor children . . . . The right of support is inherent and cannot be waived, even by agreement." (alteration in original) (quoting Abel v. Abel, 824 So. 2d 767, 768–69 (Ala. Civ. App. 2001) (internal citations and quotations omitted))).  To be clear, parents have certain constitutional rights concerning raising their children.  See Troxel v. Granville, 530 U.S. 57 (2000); Santosky v. Kramer, 455 U.S. 745 (1982).  But parents do not have a constitutional right to avoid supporting

8

their minor child or to be free from paying what child support amount a state-law system providing due process protection determines the parent to owe.

Dietz also alleges that "parents lose custody of their children simply by one person saying the word 'fear' to a judge to take advantage of domestic violence laws & restraining orders. This is <u>clearly unconstitutional</u> and has created a situation where there's **huge financial incentives** for both the parent and the state to force one parent out of the lives of their children." Doc. 1-1 at 11 (capitalization omitted). Liberally construed, Dietz alleges that child support is unconstitutional as applied. "An as-applied challenge consists of a challenge to the statute's application only as-applied to the party before the court." <u>Republican Party of Minn., Third Cong. Dist. v. Klobuchar</u>, 381 F.3d 785, 790 (8th Cir. 2004) (citing <u>City of Lakewood v. Plain Dealer Publ'g Co.</u>, 486 U.S. 750, 758–59 (1988)). Dietz does not allege that he lost custody because one person said the word "fear" to a judge. <u>See generally</u> Doc. 1-1. Thus, Dietz does not have standing to challenge child custody provisions as applied to him personally.

### b.     Federal Law

#### i.      Equal Protection

Dietz claims that Title IV-D is patently unconstitutional because it "is a law that gives officers of the court the incentive to abuse their power under color of law, to cause irreversible harm to countless individuals & families[,]" which he claims infringes on equal protection rights. Doc. 1-1 at 1–2 (capitalization omitted). He also claims that "[c]hild 'support' removes all rights of fatherhood for independent self-determination protected by the U.S. Constitution." Doc. 1-1 at 3. Dietz argues that custodial and noncustodial parents are not similarly situated because noncustodial parents suffer financial penalties and lose their fundamental constitutional right to parent their children. <u>Id.</u> at 9. But general allegations of sexism are not sufficient to allege an

equal protection claim. See Baylor, 2019 WL 3470798, at *8 ("With respect to [the father's] allegations that the United States . . . Constitution[] and Title IV-D deprive men of their rights, his broad and conclusory claim of sexism is insufficient to state a plausible equal protection claim."). Thus, his equal protection claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### ii.      Positive Law

Dietz alleges that Title IV-D has never been enacted into positive law. Doc. 1-1 at 31. "A statute that is not positive law does not mean the statute is invalid. It simply means that any discrepancy between the statute as codified in the U.S. Code and the Act that Congress passed must be resolved in favor of the version as reflected in the Statutes at Large." Baylor, 2019 WL 3470798, at *9 (internal citations and quotations omitted). Dietz does not allege any discrepancies between a codified statute and a statute at large. Thus, his positive law claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### c.      State Statutes

### (i)      Coram Non Judice

Dietz alleges that orders made under an expedited child support process are void as coram non judice. Doc. 1-1 at 20. See also id. at 27 (alleging that nonjudicial employees operated as clerks and judges, which he claims is a judicial nullity). Dietz references the Child Support Enforcement Program, which states that "proceedings conducted pursuant to either the expedited judicial or expedited administrative process must be presided over by an individual who is not a judge of the court." Id. at 20 (capitalization omitted). He claims that the orders established by an expedited process have the same effect as a court order and each state may design a process within

such limitations, but he argues that such "court orders are coran [sic] non judice[,]" which renders those judgments as void because they are not made in the presence of a judge. Id. (capitalization omitted). South Dakota Codified Law provides that a referee may be appointed to enter a report in child-support cases and the circuit court may enter its order following the time for objections. SDCL § 25-7A-6. Dietz claims that nothing happened when he contested his case. Doc. 1-1 at 20. In short, Dietz is collaterally attacking his state child custody decision, which is barred by the Rooker-Feldman doctrine. See Dziedzic v. Ark. Dep't of Hum. Servs., 2019 WL 2167419, at *5 (W.D. Ark. May 17, 2019) (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). If the state court failed to rule on his challenge to a referee's child support decision, Dietz's remedy was to appeal to the Supreme Court of South Dakota and not to collaterally attack the final decision in federal court.

### (ii)   General Allegations of Unconstitutionality

Dietz claims that South Dakota's "income based child support statute impermissibly enfringe [sic] the privacy interest right under the 14[th] Amendment of the federal Constitution[.]" Doc. 1-1 at 2 (capitalization omitted). "[T]he Supreme Court has recognized that notions of substantive due process contained within the Fourteenth Amendment safeguard individuals from unwarranted governmental intrusions into their personal lives." Eagle v. Morgan, 88 F.3d 620, 625 (8th Cir. 1996) (citation omitted). Because Dietz generally alleges that child support violates his right to privacy without setting forth facts showing how it violates such right, he has failed to state a claim. Even if he had stated a claim, many courts have identified that child support does not violate the right to privacy. See Muhammad v. Davis, 2011 WL 6003611, at *3 (M.D. Pa. Nov. 30, 2011) ("The right to privacy does not prevent the state from collecting child support payments from parents."); Muhammad v. Davis, 461 F. App'x 91, 92 (3d Cir. 2012) (affirming

2011 WL 6003611 and stating that "the state's interest in child welfare is sufficiently compelling to overcome a claim challenging a support order on privacy grounds" (citing N.E. v. Hedges, 391 F.3d 832, 836 (6th Cir. 2004)); Thompson v. Leach, 2024 WL 243424, at *3 (D.S.C. Jan. 23, 2024) ("child support payments ordered by a state family court do not infringe upon the right to privacy").

Dietz also claims that South Dakota's "income based child support statutes impermissibly enfringe [sic] . . . his 1[st] Amendment rights which included all rights to decisions inside the home including child rearing decisions." Doc. 1-1 at 2 (capitalization omitted). Dietz claims that "the state government under common & natural law is **not permitted** to intrude upon []his **fundamental right** [to make parenting decisions] without proof of demonstrable harm to the child." Doc. 1-1 at 3. See also id. at 10 (claiming that "state law impermissibly intrudes upon and implicates fundamental parental rights" (capitalization omitted)).   As this Court discussed, requiring parents to support their minor child does not infringe on a fundamental right to parent. See supra at 8–9.

He claims that child support is problematic because custody is awarded to the mother under the guise that she is "the better parent[,]" but the State "then turns around and admits the custodial parent is **incapable** of caring for the children without the fiscal transfer of wealth from the non custodial [sic] parent." Doc. 1-1 at 3 (capitalization omitted).  He alleges that "not only does the State take [his] income without any proper demonstration of due process, but then openly enjoins the mother to **pursue fraud** for her own fiscal gain." Id. (capitalization omitted).  However, as the Supreme Court of South Dakota has made clear, "[c]hild support is for the benefit of the child, not the mother, and [the child] is entitled to support from both parents.  The fact that [the child's] mother has been fortunate enough to be able to provide [the child's] basic needs does nothing to

decrease the support owed the child by [the child's] father." Tovsland v. Reub, 686 N.W.2d 392, 403 (S.D. 2004).

Dietz claims that his driver's license was impermissibly taken without due process for failure to pay child support. Doc. 1 at 7. This Court has previously identified that a South Dakota statute restricting child support obligors' drivers licenses for non-payment of child support does not deny substantive due process or violate the equal protection clause. Thompson v. Ellenbecker, 935 F. Supp. 1037, 1040–41 (D.S.D. 1995).

He claims that for child support, "no statutory scheme contains a constitutionally compliant evidentiary standard" and that "statutes expressly written which diminish parents['] fundamental rights, are not constitutionally compliant, and therefore do not meet strict scrutiny under federal law." Doc. 1-1 at 16 (capitalization omitted). See also id. (Dietz states that "where a state law impinges upon a fundamental right secured by the U.S. Constitution it is presumptively unconstitutional" (capitalization and citation omitted)). He concludes that "where both parents rights are diminished under state law, there is no set of circumstances that a constitutional outcome can ever be achieved." Id. (capitalization omitted).

No constitutional provision renders child support unconstitutional. All fifty states have regimens for family law and child support, and over the nearly 250 years of the United States and nearly 230 years of the Constitution, no decision has rendered state-ordered child support unconstitutional. See N.E., 391 F.3d at 836 ("[T]here are no judicial decisions recognizing a constitutional right of a man to terminate his duties of support under state law for a child that he has fathered, no matter how removed he may be emotionally from the child."). Thus, Dietz's claims that child support is unconstitutional can be screened for dismissal.

13

### 3.     Claims Against DCS

Dietz alleges several claims against DCS: (1) violating his First Amendment rights, (2) violating his Fourth Amendment rights, (3) violating his Fifth Amendment rights, (4) violating his Thirteenth Amendment rights, (5) violating his Fourteenth Amendment rights, (6) violating his rights under § 458 of Title IV-D of the Social Security Act, (7) violating his rights under 18 U.S.C. § 245, (8) fraudulent inducement, (9) fraud, (10) false advertisement, (11) forced and compelled association, (12) deprivation of rights under color of law, (13) compelled disclosure and use of a social security number, (14) intentional infliction of a bill of attainder and pain and penalties, and (15) right to counsel and the right to a trial by jury or any procedural safeguards. Doc. 1 at 4–6; Doc. 1-1 at 26–29.

The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. Cory v. White, 457 U.S. 85, 90–91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the court examines the powers and characteristics of the entity that was created by state law to determine if it in reality is acting as the state, the degree of local autonomy and control exercised by the entity, and whether the funds to pay an award are derived from the state treasury. Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985) (citing Laje v. R.E. Thomason Gen. Hosp., 665 F.2d 724, 727 (5th Cir. 1982)).

DCS is a division of the South Dakota Department of Social Services (DSS). See S.D. Dep't of Soc. Servs., Child Support, https://dss.sd.gov/childsupport/ (last visited Apr. 22, 2024). DSS was created by the state legislature. See SDCL § 1-36-1. DSS is an arm of the State of South Dakota and, as such, is not subject to suit under § 1983. See Cory, 457 U.S. at 90–91.

Dietz alleges that the State of South Dakota waived its Eleventh Amendment immunity because "Defendants performed their 'obligation of IV-D contracts in an Independent Capacity,' rather than as officers, employees, or agents of the State of South Dakota or DSS." Doc. 1-1 at 28 (capitalization omitted). The "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675 (1999) (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985)). The Supreme Court of the United States has held that the Court "will find a waiver either if the State voluntarily invokes [federal] jurisdiction or else if the State makes a 'clear declaration' that it intends to submit itself to [federal] jurisdiction." Id. at 675–76 (internal citations omitted). "A state may waive its immunity either by explicitly specifying its intention to subject itself to suit or by voluntarily participating in federal spending programs where Congress expressed a clear intent to condition receipt of federal funds on a state's consent to waive its sovereign immunity." Doe v. Nebraska, 345 F.3d 593, 597 (8th Cir. 2003) (citing Atasacadero State Hosp., 472 U.S. at 238 n.1).

The State of South Dakota has not waived its immunity by receiving funds through Title IV-D. See Chris H. v. New York, 2017 WL 2880848, at *7 (S.D.N.Y. July 5, 2017) ("Title IV-D of the Social Security Act, which funds agencies tasked with collecting child support payments, does not condition receipt of funds on a waiver of sovereign immunity" (citing 42 U.S.C. §§ 651–669b)); Quinn v. N.C. Dep't of Health & Hum. Servs., 2020 WL 369290, at *4 (W.D.N.C. Jan. 22, 2020) (holding that Title IV-D of the Social Security Act does not abrogate a state's sovereign immunity) (citing Jenkins v. Massinga, 592 F. Supp. 480, 494 n.12 (D. Md. 1984)). Because the

State of South Dakota has not waived its Eleventh Amendment immunity, Dietz's claims against

DCS are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[5]

### 4.    Claim Under 18 U.S.C. § 1951

Dietz alleges that "the administration of the [state] court . . . has used threats and coercion

to obtain funds from Zach Dietz in violation of 18 U.S. Code § 1951." Doc. 1-1 at 4 (capitalization

omitted).  Dietz does not sue the administration of the state court, but even if he did, the United

States Court of Appeals for the Eighth Circuit has held that "neither the statutory language of 18

U.S.C. § 1951 nor its legislative history reflect an intent by Congress to create a private right of

action." Wisdom v. First Midwest Bank, 167 F.3d 402, 409 (8th Cir. 1999). Thus, Dietz's claim

under 18 U.S.C. § 1951 is dismissed with prejudice for failure to state a claim upon which relief

may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 5.    Claim Under 18 U.S.C. § 1961

Dietz claims that "the administration of the [state] court has acted in violation of 18 U.S.

Code § 1961[.]" Doc. 1-1 at 4 (capitalization omitted).  Dietz does allege that there has been illegal

activity and fraud but does not explain how 18 U.S.C. § 1961, the Racketeer Influenced and

Corrupt Organizations Act (RICO), applies to his case.  See id. "To state a claim under RICO, a

plaintiff must plead '(1) conduct (2) of an enterprise (3) through a pattern (4) of a racketeering

activity.' " Aragon v. Che Ku, 277 F. Supp. 3d 1055, 1070 (D. Minn. 2017) (quoting Nitro Distrib.,

Inc. v. Alticor, Inc., 565 F.3d 417, 428 (8th Cir. 2009)). "When the alleged racketeering activity

---

[5] Dietz alleges that his rights were violated by other state and county agencies and employees, including the Minnehaha County Court, judges, the Clerk of Court, the sheriff, and other entities. Doc. 1-1 at 27. But those individuals and entities are not named as defendants.  Claims against individuals and entities who are not named as defendants are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

is fraud, the elements of a RICO claim must be pleaded with particularity under Fed. R. Civ. P. 9(b)." Ill. Farmers Ins. Co. v. Mobile Diagnostic Imaging, Inc., 2014 WL 4104789, at *5 (D. Minn. Aug. 19, 2014) (citing Crest Constr. II, Inc. v. Doe, 660 F.3d 346, 353 (8th Cir. 2011)). Dietz has not named the administration of the state court as a defendant and has not described with particularity fraud in violation of 18 U.S.C. § 1961. Thus, Dietz's claim under 18 U.S.C. § 1961 is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 6.     Civil Conspiracy

Dietz alleges that Kuhnert, Bauerle, Johnson, and DCS conspired to interfere with his civil rights. Doc. 1 at 2. He generally claims that "the defendants named in this case have conspired to commit fraud by and through the establishment and enforcement of fraudulent child support orders that were created with **complete disregard of evidence & fact!**" Doc. 1-1 at 1 (capitalization omitted). He alleges that "the bad actors in the courts have devised this scheme to inflate the incomes of obligors which in turn would increase the revenues available to the courts through Title IV-D funding." Id. (capitalization omitted). He claims that "the defendants in this case have engaged in a criminal conspiracy to defraud the United States government through the fraud & abuse of Title IV-D, section 458 of the Social Security Act." Id. at 4 (capitalization omitted).

To plead a civil conspiracy under § 1983, Dietz must show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." Livers v. Schenck, 700 F.3d 340, 360–61 (8th Cir. 2012) (citation omitted). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008) (citing Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999)). Although

a plaintiff can use circumstantial evidence to show a conspiracy, a plaintiff bringing a § 1983 conspiracy claim must allege "specific facts tending to show" that the defendants reached an agreement to deprive the plaintiff of a constitutional right or a meeting of the minds. See Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010). Dietz fails to assert facts sufficient to show a meeting of the minds of the defendants for the commission of one or more unlawful overt acts. See Doc. 1-1 at 1, 3, 4. Nor has Dietz alleged a viable claim of deprivation of a constitutional right, for reasons explained both above and below in this opinion and order. Thus, Dietz's conspiracy claims against Kuhnert, Bauerle, Johnson, and DCS are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 7.     Claims Against Kuhnert, Bauerle, and Johnson

#### a.     28 U.S.C. § 245

Dietz alleges a claim under 28 U.S.C. § 245 for interference with a federally protected activity. Doc. 1 at 6. He claims that he worked thirty hours a week while he was a student at Southeast Technical Institute, and he received student loans that came from a federally protected program. Id. He provided the necessary documentation to the child support referee to prove that he could not pay $390.00 in child support, but he claims that he was forced to drop out of school to work full time to pay his child support obligations. Id. Dietz alleges these actions interfered with his "life, liberty and pursuit of happiness" in violation of 28 U.S.C. § 245. Id. But 28 U.S.C. § 245 is solely a criminal statute: "Section 245(b)(1) permits federal prosecution for interference with a long list of federally protected activities; it confers neither substantive rights nor a private right of action for damages." U.S. ex rel. Snead v. Kirkland, 462 F. Supp. 914, 920 (E.D. Penn. 1978) (citing New York v. Horelick, 424 F.2d 697, 702 (2d Cir. 1970)). Thus, Dietz's claim under

28 U.S.C. § 245 is dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

> **b.  Constitutional Violations**

Dietz sues Kuhnert, Bauerle, and Johnson for violating his First, Fourth, Fifth, Sixth, Thirteenth,[6] and Fourteenth Amendment rights. Doc. 1 at 4–5; Doc. 1-1 at 30, 32–36. He also alleged that Kuhnert, Bauerle, and Johnson violated his rights under color of law because they "deprived and violated his rights under title 42, the Public Health and Welfare Code which is comprised IV-D of the Social Security Act which is editorially complied and organized into the title, but title 42 itself has never been enacted into positive law." Doc. 1-1 at 31 (capitalization and citation omitted). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citation omitted). Dietz has not alleged facts sufficient to show that Kuhnert, Bauerle, and Johnson acted under color of state law. Thus, Dietz's First, Fourth, Fifth, Sixth, Thirteenth, and Fourteenth Amendment claims and his claim for deprivation of rights under color of law against Kuhnert, Bauerle, and Johnson are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

---

[6] "Unlike the Fourteenth Amendment, the Thirteenth Amendment applies not just to governmental actors, but private parties as well. But even so, the Thirteenth Amendment (like the Fourteenth) does not provide a private cause of action for violation of its terms, so a plaintiff must proceed under an implementing statute." Kostuch v. Leabhart, 2019 WL 5150096, at *2 (D. Minn. May 20, 2019) (internal citations and quotations omitted) R&R adopted by 2019 WL 4072386 (Aug. 28, 2019). Dietz does not cite to an implementing statute. Even so, courts have held that child support enforcement obligations are not the subject matter that the Thirteenth Amendment was designed to protect against. Royster v. Fla. Dep't of Revenue, 2023 WL 6882344, at *5 (M.D. Fla. Sept. 13, 2023) (citing Greenberg v. Zingale, 138 F. App'x 197, 200 (11th Cir. 2005) (per curiam)); United States v. Ballek, 170 F.3d 871, 874 (9th Cir. 1999).

c.      **Compelled Disclosure and Use of a Social Security Number**

Dietz cites the Social Security Act, 42 U.S.C. § 666(a)(13), for "the disclosure of [his] SSN for the sole purpose of hunting and tracking Zach Dietz like an animal and then forcing him under coercion to succeed to the status of non custodial [sic] parent in order to establish, modify, and enforce IV-D collections." Doc. 1-1 at 31–32 (alteration in original) (capitalization omitted). To allege a valid claim under 42 U.S.C. § 666(a)(13), Dietz "must show that this statutory grant of authority both created an individual right and gave private plaintiffs the ability to enforce it." Wells v. Creighton Preparatory Sch., 82 F.4th 586, 593 (8th Cir. 2023) (citing Alexander v. Sandoval, 532 U.S. 275, 286 (2001)). Other courts have held that 42 U.S.C. § 666 does not create a private cause of action. See Mosier v. AG of Tex., 2014 U.S. Dist. LEXIS 181406, at *4 (W.D. Ark. Nov. 17, 2014) R. & R. adopted by Mosier v. AG of Tex., 2015 WL 417984, 2015 U.S. Dist. LEXIS 11459 (W.D. Ark. Jan. 30, 2015); Cutts v. Berry, 2006 WL 8459116, at *3–4 (E.D. Mo. Oct. 19, 2006). Because Dietz has failed to establish a private right of action under 42 U.S.C. § 666, his claim for compelled disclosure and use of a social security number is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1).

d.      **Intentional Infliction of a Bill of Attainer, Pain, and Penalties**

Dietz sues the defendants for intentional infliction of a bill of attainer, pain, and penalties because they acted under 42 U.S.C. § 666(a)(4)(A) "to place liens on his real and personal property to collect amounts allegedly owed, which arose by operation of law, the manner of which, involuntary financial servitude developed upon Zach Dietz, by the mere application of IV-D without the act or cooperation, of Zach Dietz for profit." Doc. 1-1 at 32 (capitalization omitted). A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an

identifiable individual without provision of the protections of a judicial trial." Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 468 (1977).

He also claims that "IV-D is an act of the legislature that declare non-custodial parents guilty of non-payment and punishing them without a trial by jury in violation of the Sixth Amendment and Article I Section 9 Paragraph 3." Doc. 1-1 at 32–33 (capitalization omitted). "[T]he provisions of the Sixth Amendment are explicitly confined to criminal prosecutions, and are inapplicable to civil proceedings such as the child support hearing Plaintiff is protesting." Wolfe v. Mo. Dep't of Soc. Servs., 2006 WL 1382325, at *6 (W.D. Mo. May 17, 2006) (citing Austin v. United States, 509 U.S. 602, 608 (1993)). Dietz also has not established a private right of action under 42 U.S.C. § 666. Thus, Dietz's claims for intentional infliction of a bill of attainer, pain, and penalties are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### e.    Fraud

Dietz claims that the defendants committed fraud because they " 'publically [sic] advertise on their website that every child has the right to support from both parents.' And publically [sic] advertise that D.S.S. IV-D franchise benefits children by enforcing parental responsibility for their support." Doc. 1-1 at 30 (capitalization omitted). Dietz alleges four reasons why the defendants committed fraud:

> (1.) Misrepresented the material facts that IV-D was for the best interest of children and custodial parents and it does create a federal right to service, and that needy families with children are the intended beneficiaries of the statutes. (2.) Knew the representations were false, and that IV-D was only created to benefit the state treasury not the children. (3.) Plaintiff justifiably relied on the misrepresentations. And (4.) An actual injury and loss resulted from [Plaintiff's] reliance in the misrepresentations."

Doc. 1-1 at 30 (alteration in original) (citation and capitalization omitted). But the actions that Dietz alleges to be fraud are done by DCS, which is immune from suit. See id. at 30, 38–42.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To plead with particularity, the party alleging fraud "must typically identify the 'who, what, where, when, and how' of the alleged fraud." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (quoting United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003)). To the extent that Dietz alleges that Kuhnert, Bauerle, and Johnson participated in child support fraud, he has not pled those claims with particularity. Thus, Dietz's fraud claims against Kuhnert, Bauerle, and Johnson are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### f.  Fraudulent Inducement

Dietz claims that he was fraudulently induced by the defendants because

> Defendants compelled him "under SEC 403 Grants (a)(5)(c)(iii)(III), to become
> enrolled in the IV-D franchise and to be in compliance with the terms of a personal
> responsibility contract, in which [Plaintiff] unknowingly entered into with the
> defendants, and a commitment to . . . cooperate in employment or related activities
> to make regular payments to the defendants and a commitment to particapate [sic]
> in services, designed to compel plaintiff to obtain and retain employment to
> increase earnings in order to enhance their federal profits. Under SEC 466(A) 42
> U.S.C. § 666(A)(15)(A)(i) defendants used procedures to ensure that if plaintiff
> owed past-due support, he will work or have a plan for payment."

Doc. 1-1 at 29 (citation and capitalization omitted) (second alteration in original). See also id. at 38.

"Title IV-D contains no private remedy--either judicial or administrative--through which aggrieved persons can seek redress." Blessing v. Freestone, 520 U.S. 329, 348 (1997). This Court determined that Dietz has failed to establish a private right of action under 42 U.S.C. § 666. See

supra at 20. Thus, Dietz's fraudulent inducement claims under Title IV-D and 42 U.S.C. § 666 are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

To the extent that Dietz seeks to allege a claim for fraudulent inducement under state law, this Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over his state-law claim; his state-law fraudulent inducement claim is dismissed without prejudice without considering the merits of the claim.

### g.    False Advertisement

Dietz sues Kuhnert, Bauerle, and Johnson for false advertisement under 15 U.S.C. § 52. Doc. 1-1 at 28, 30. A private cause of action may not be brought under 15 U.S.C. § 52. Holloway v. Bristol-Myers Corp., 485 F.2d 986, 988 (D.C. Cir. 1973). Thus, Dietz claims under 15 U.S.C. § 52 against Kuhnert, Bauerle, and Johnson are dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### h.    Compelled Association

Dietz alleges that the "IV-D franchise is in fact a private business for profit who offers and sells IV-D services to 'customers' and that he 'was compelled to become a customer of the IV-D franchise against his will.' " Doc. 1-1 at 31. Although he does not cite the First Amendment, Dietz appears to allege a compelled association claim under the First Amendment. Dietz cannot allege a compelled association claim against Kuhnert, Bauerle, and Johnson because he has not shown that Kuhnert, Bauerle, and Johnson acted under color of state law. Even if they did act under state law, other courts have dismissed claims alleging "forced and compelled association on grounds that the child support organization was in fact a private business for profit which offered and sold its services to 'customers' [because it] was barred by Rooker-Feldman[.]" Tomasella v.

Div. of Child Support, 2021 U.S. Dist. LEXIS 185546, at *19 (N.D. Tex. Aug. 20, 2021) (citing

Troy of Family Carslake v. Dep't of Child Support Servs., 2019 WL 2142036, at *3 (N.D. Cal.

May 16, 2019)).  Thus, Dietz's compelled association claim is dismissed with prejudice under 28

U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## II.   Conclusion

Accordingly, it is

ORDERED that Dietz's claims requesting review and termination of his state child support

obligations are barred by the Rooker-Feldman doctrine and are dismissed with prejudice under 28

U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  It is further

ORDERED that Dietz's claim that the administrative process violates the South Dakota

Constitution is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

It is further

ORDERED that Dietz's claim under 18 U.S.C. § 1951 is dismissed with prejudice under

28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  It is further

ORDERED that Dietz's claim under 28 U.S.C. § 245 is dismissed with prejudice under 28

U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  It is further

ORDERED that Dietz's claims under 15 U.S.C. § 52 against Kuhnert, Bauerle, and

Johnson are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  It is

further

ORDERED that Dietz's compelled association claim is dismissed with prejudice under 28

U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  It is further

ORDERED that this Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over his state-law claim. Dietz's state-law fraudulent inducement claim is dismissed without prejudice without considering the merits of the claim. It is finally

ORDERED that the remainder of Dietz's claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

DATED April 30ᵗʰ, 2024.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

25